## P. STENNING COATE v. A. K. TIGRETT.

Western Section. November 12, 1926.

No petition for Certiorari was filed.

1. **Contracts. The changing of the consideration in a contract submitted by one party constitutes merely a new offer and is not binding until accepted.**

   Where a party endeavoring to sell real estate, prepared a contract stating the consideration as $20,000 and submitted it to the prospective buyer, who changed the consideration from $20,000 to $19,000 and inserted the clause that the title must be guaranteed and signed the contract and returned it to the seller, held that this constituted a new offer on the part of the purchaser and was not binding until it was accepted by the seller.

2. **Contracts. An offer may be withdrawn at any time before it is accepted.**

   Where an offer to purchase real estate is made the negotiation remains open and imposes no obligation on either of the parties until it is either accepted or rejected and if the offer is withdrawn before it is accepted, the matter is left as though no offer had ever been made.

3. **Specific performance. Evidence. Evidence held to show that offer was withdrawn before it was accepted.**

   In an action for specific performance where the evidence showed that the seller submitted a contract, but the buyer changed the consideration before signing the contract and returned it to the seller, and the evidence further showed that the offer was withdrawn before the contract was signed by the seller, held that the contract was never consummated and an action for specific performance would not lie.

4. **Estoppel. The fact that a contract which was signed after the offer was withdrawn was returned to the secretary of the party making the offer and was never returned by him, held not to constitute an estoppel.**

   In an action for specific performance where the evidence showed that after the offer was made it was withdrawn and later the party signed the contract and returned it to the secretary of the party making the offer and that the paper was overlooked and never returned by him, held not to constitute such an act as would estop the party denying the making of the contract.

Appeal from Chancery Court of Shelby County; Hon. Wightman Hughes, Chancellor.

Judgment affirmed.

A. B. Knipmeyer, of Memphis, for appellant.

J. W. Canada and J. E. McCall, of Memphis, for appellee.

SENTER, J. The original bill in this cause seeks to enforce specific performance of an alleged contract for the purchase of certain real estate situated in Shelby county, Tennessee. The bill alleges that the complainant was the owner in fee simple of the parcel of land in question, and that on the 20th day of April, 1925, complainant entered into a written contract with the defendant, whereby com-

plainant agreed to sell, and defendant agreed to purchase said parcel of land at the price of $19,000, to be paid in cash upon delivery by complainant of a good and sufficient warranty deed, conveying said land. It appears that the alleged contract entered into between the parties contained a provision that the title to said property was to be guaranteed. We deem it unnecessary to set out the alleged written contract as there is no dispute as to its terms on interpretation.

The answer of the defendant denies that he entered into a written contract with the complainant for the purchase of the property. The answer admits that the defendant became interested in the purchase of the property, and made inquiry to ascertain whether or not the property was for sale, and if for sale, at what price, and was referred to Mr. Gilmer Richardson, a real estate agent, and the matter was taken up with Mr. Richardson, and the defendant was informed by Mr. Richardson that Mr. Coate, the owner, was asking $25,000 for the property; that defendant was not interested in the property at that price, but that Mr. Richardson subsequently called at defendant's office to discuss the subject with defendant on several occasions; that on or about April 20, 1925, Mr. Richardson again called at the office of defendant with a contract prepared, except as to signatures, and offered the said property to defendant at the price of $20,000, and said offer to remain open during the week of April 20, 1925. The answer states that the contract referred to was the same paper as that attached to the original bill as an exhibit, except the alleged contract mentioned in the original bill states the purchase price to be $19,000 and calls for a guaranteed title, and bears the signatures of Inter-state Realty Company, Agt., P. Stenning Coate, and A. K. Tigrett. The answer then states that defendant did not accept the contract, and on April 25, 1925, the said Richardson (representing Inter-state Realty Co., Agent of P. Stenning Coate) had instructed him to advise the defendant that unless the defendant accepted the contract calling for $20,000 as the purchase price of said land, after that date, would revert back to the original sum of $25,000. The answer then alleges that the defendant at that time intimated to Mr. Richardson that he would, perhaps, be willing to pay $19,000 for the property, whereupon, Richardson stated that perhaps the principal Mr. Coate would accept such proposition, and suggested that the change be made in the paper from $20,000 to $19,000, and the change was so made, and a further change or addition that title was to be guaranteed, and that at the request of Richardson, defendant executed his check in the sum of $2,000 as earnest money should his offer be accepted, and that the check was given and the contract was signed by defendant with the specific understanding that the offer was to be accepted by Coate and the defendant notified on that date, Saturday, April 25, 1925, that said Coate

did not accept said offer and notify defendant on said date, but on the contrary the said offer was not accepted by Coate until it had expired and had been withdrawn.

Issues of fact were made up and submitted to a jury as follows:

"Issue No. 1: When, on April 25, 1925, defendant signed and delivered the form of contract in question, did defendant A. K. Tigrett advise any representative of complainant that such signature and delivery was on condition that complainant also execute such form of contract on April 25, 1925, and that defendant be notified thereof on that day?

The jury answered Issue No. 1 'No.'

Issue No. 2: Did defendant A. K. Tigrett receive and retain one copy of said form of contract signed by both parties without objecting to delay by complainant in signing and returning it?

The jury answered Issue No. 2 'Yes.' "

Issue No. 3: In the conversation over the telephone had by Miss Hall with Mr. Richardson about 7:30 P. M. on Saturday April 25, 1925, did Miss Hall tell Mr. Richardson not to have the contract signed?

The jury answered Issue No. 3 'Yes.''

Upon the issues of fact having been determined by the jury, the Chancellor decreed that Miss Hall, the duly authorized agent of the defendant, in her telephone conversation with Mr. Richardson revoked the offer previously accepted, and that the offer having been revoked before it had been accepted by the complainant, the mere retention of the form of contract, thereafter by the defendant, did not, under the circumstances, revive the revoked offer so as to create a binding agreement between the parties. The Chancellor further decreed that complainant was not entitled to a decree for specific performance as prayed for in the original bill; that the alleged contract set up in the original bill is null, void and of no effect; that complainant's bill be dismissed, and that complainant and sureties pay the costs of the cause. From the decree of the Chancellor in dismissing the bill, the complainant has appealed to this court and has assigned errors as follows:

1.

"The Chancellor erred in dismissing complainant's bill, and denying specific performance of the contract sued on.

2.

The Chancellor erred in holding that Miss Hall's telling Mr. Richardson over the telephone Saturday, April 25, 1925, at about 7:30 p. m. 'Not to have the contract signed' amounted to

a revocation of the offer evidenced by the contract document signed and delivered by defendant.

**3.**

The Chancellor erred in holding that defendant's retention of one counterpart of the contract document after execution thereof by complainant under the circumstances shown by the proof, did not make the same binding on him as it was on the complainant.

**4.**

The Chancellor erred in holding that the statement or request of Miss Hall, as referred to in the third issue was actually communicated.

**5.**

The Chancellor erred in holding that the contract sued on is null, void and of no effect.' "'

A consideration of the assignments of error requires that we first notice the three issues of fact submitted to the jury under the instruction of the court to the jury, and the answers to the issues of fact returned by the jury. Under Issue No. 1 the jury found that defendant Tigrett at the time he signed the contract on April 25th did not sign the same on the condition that complainant would also execute the contract and notify defendant of its execution by complainant on that day. This issue was determined by the jury adversely to the contention of defendant, and there is material evidence in the record to support the finding of this fact by the jury. The jury also found that A. K. Tigrett received and retained one copy of the contract signed by both parties without objecting to delay by complainant in signing and returning it. The third issue of fact as found by the jury, and concurred in by the Chancellor is supported by material evidence. This issue so found by the jury was made the basis of the decree of the Chancellor on the holding that the offer to purchase the property made by defendant was revoked by the defendant before it had been accepted by the complainant. It is insisted for appellant that if Miss Hall, the private secretary and agent of defendant, said to Mr. Richardson, the agent of complainant, in the telephone conversation "not to have the contract signed," that Mr. Richardson did not hear the statement, and hence it was not communicated to him, and that the defendant through his Secretary, Miss Hall, did not, therefore, inform Mr. Richardson not to have the contract signed. The jury, in answer to issue No. 3 found that about 7:30 p. m. on Saturday, April 25, 1925, Miss Hall did tell Mr. Richardson not to have the contract signed. There is a

decided conflict in the evidence of Miss Hall and Mr. Richardson, as to the substance of the telephone conversation. It appears that Mr. Richardson, about 7:30 p. m. on Saturday, April 25, 1925, called the office of defendant Tigrett and had a telephone conversation with Miss Hall. Mr. Richardson states that he simply called to ascertain where he could get in communication with Mr. Tigrett in the event he should desire to communicate with him, and that Miss Hall told him that he could probably find Mr. Tigrett at the Park View Hotel. Mr. Richardson states that nothing was said by Miss Hall in the telephone conversation about not having the contract signed. Miss Hall testifies with reference to the telephone conversation that Mr. Richardson called her about 7:30 o'clock Saturday night at her home and asked if she knew where he could locate Mr. Tigrett. "I told him to call the Park View; that he could get him on the phone. I said, have you seen Mr. Coate? He said: I have not; Mr. Coate is sick; I have not been able to see him; I have not had the contract signed. I said, Don't get it signed; Mr. Tigrett don't want the property unless the contract was signed and he was notified this afternoon." She stated further that Mr. Richardson replied: "I am going to try anyhow. She then said that that will not do a bit of good, and then she called Mr. Tigrett on the telephone immediately after she had had this talk with Mr. Richardson and told Mr. Tigrett of the telephone conversation had with Mr. Richardson and what she had said.

As above stated, the Chancellor held that the answer of the jury to this issue No. 3, and the finding by the jury that Miss Hall in the telephone conversation had told Mr. Richardson not to have the contract signed, constituted a revocation of the offer made by Mr. Tigrett for the purchase of the property and that the offer was revoked before it had been accepted by complainant. While it is insisted by appellant that if Miss Hall stated in the telephone conversation to Mr. Richardson not to have the contract signed, that Mr. Richardson did not hear that statement, and hence the effort to revoke the contract was not communicated to him, and hence the contract could not be revoked without actually communicating the revocation thereof to complainant or the complainant's agent, Miss Hall states that she made the statement in the telephone conversation, and specifically directed Mr. Richardson not to have the contract signed, and that Mr. Richardson replied that he would try anyhow. The jury accepted the evidence of Miss Hall on this question, and the reply of Mr. Richardson to the effect that notwithstanding Mr. Tigrett did not want the property unless the contract was signed and he was notified that afternoon, that he was going to try to have it signed and accepted anyhow, indicated that he did understand that Miss Hall said in the telephone conversation that Mr. Tigrett

would not take the property unless the contract was signed that afternoon. We think it immaterial whether there was a condition attached to the signing of the instrument by Mr. Tigrett that his offer would have to be accepted on that date, because Mr. Tigrett would have the legal right to withdraw his offer at any time before it was accepted. Conceding that at the time Mr. Tigrett signed the contract, which had to be resubmitted to complainant Coate for his acceptance, since the amount named in the contract was reduced from $20,000 to $19,000 it amounted to but an offer to pay $19,000 for the property on the terms and conditions as set forth in the written agreement. Before the agreement was binding upon the complainant it would have required his assent, which would amount to an acceptance of an offer to purchase, and, if defendant through his authorized agent withdrew the offer, for any reason, before it was accepted by the complainant, it was not a binding agreement upon either party, and non-enforcible.

6 R. C. L., 604, states the rule: "So long as the offer has been neither accepted nor rejected, the negotiations remain open and impose no obligation on either party. The one may decline to accept or the other may withdraw his offer; as either rejection or withdrawal leaves the matter as if no offer had ever been made."

It clearly appears from the record that on Saturday, April 25, 1925, Mr. Richardson had called at the office of defendant Tigrett to further discuss the matter of selling this property to defendant Tigrett, and had with him the blank form of contract filled out, but unsigned by either party; that in the conversation and negotiations occurring at that time in the office of Mr. Tigrett, Mr. Tigrett declined to sign the contract for the purchase of the property at the price written into the contract of $20,000, but agreed to sign the same provided the price was reduced from $20,000 to $19,000, and at the same time wrote into the contract the words "Title to be guaranteed." Mr. Richardson, as representative of the Inter-state Realty Company, the agent of complainant, stated that he thought he could perhaps have Mr. Coate, the owner, agree to accept the offer, and the contract, or offer was then signed by defendant Tigrett, and at the same time he delivered to Mr. Richardson his check for $2,000, payable to the Inter-state Realty Company, as earnest money, in the event the offer with the reduced amount should be accepted by Mr. Coate, the owner. Before the contract or offer would be binding upon either party, the assent thereto and the acceptance thereof by Mr. Coate, the owner, was necessary. It also appears that Mr. Richardson, on the same afternoon, called at the home of Mr. Coate to submit the offer, and that Mr. Coate did not sign the same on that date, but stated to Mr. Richardson that he wanted to discuss the matter with his wife and the contract was left with Mr. Coate,

who signed the same on the following Monday morning. According to the finding of the jury, and we think by a preponderance of the evidence, Miss Hall, on late Saturday evening informed Mr. Richardson that Mr. Tigrett would not take the property unless Mr. Coate accepted the offer on that date, and then told Mr. Richardson not to have Mr. Coate sign the paper, and told Mr. Richardson that Mr. Tigrett had instructed her to so inform Mr. Richardson in the event he called. It therefore appears that Mr. Richardson had notice from Mr. Tigrett through his secretary, Miss Hall, on Saturday evening, that Mr. Tigrett would not take the property unless the offer was accepted on that date. It also appears that the offer was not accepted on Saturday, the 25th, but was accepted and the paper signed by Mr. Coate on Monday the 27th, after Mr. Richardson had been notified that the offer by defendant had been withdrawn. This disposes of the second assignment of error, which is overruled and disallowed. It also disposes of the fourth and fifth assignments of error. We think that the record shows by a preponderance of the evidence that Miss Hall communicated to Mr. Richardson the withdrawal of the offer in the telephone conversation of Saturday evening, and that the Chancellor was not in error in holding that the contract or offer to purchase the property had been fully revoked, before acceptance, and was therefore "null, void, and of no effect" as decreed by the Chancellor. The fourth and fifth assignments of error are accordingly overruled. The third assignment of error presents the question that if the defendant had in fact withdrawn the offer on Saturday evening in the telephone conversation between the secretary, Miss Hall, and complainant's agent, Mr. Richardson, that subsequent negotiations and conduct upon the part of defendant operated to re-instate the instrument so as to make it a binding obligation upon the part of defendant to take and pay for the property at the price of $19,000. In support of the third assignment of error it is earnestly contended by appellant that on Monday morning following the transactions of the previous Saturday, the complainant, through his agent Mr. Richardson again called at the office of defendant Tigrett, and that in that conversation Mr. Tigrett did not contend that he was relieved of the contract because of the failure of the complainant to accept the same and to notify defendant of his acceptance on Saturday, the 25th, but that the contract signed by all the parties was then in possession of defendant Tigrett, and that defendant Tigrett did not offer to return the same, but insisted that under the terms of the contract the premium for the title guarantee was to be paid by complainant, and that after some discussion of that matter Mr. Richardson agreed to pay the premium; that Mr. Tigrett then requested that the complainant would provide for a road-way adjacent to the property in question on the lands of

complainant, and that Mr. Richardson insisted to defendant that the written contract did not call for such a roadway, but that he would endeavor to have complainant sell a roadway to defendant, but that it was not a part of the contract; and that in the conversation then had the matter of preparing an abstract of the title was also discussed and the time for the delivery of the deed was discussed. Complainant insists that by this conduct upon the part of the defendant any conditions with reference to the time of acceptance of the contract offer were waived by the defendant. In support of this contention of complainant we are cited to a rule announced in 13 C. J., p. 283. An examination of the authorities cited does not disclose any rule that would cover the contention here made by appellant. The record does not disclose any conduct upon the part of the defendant, subsequent to the withdrawal of his offer to purchase, that would constitute a waiver of the non-acceptance of the contract before the offer to purchase was withdrawn. The record does disclose that when Mr. Richardson called at the office of Mr. Tigrett on Monday morning following the telephone conversation with Miss Hall on Saturday evening preceding, he brought the signed agreement with him, and Mr. Tigrett being out of the office at the time, he left the paper with Miss Hall, and informed her he would call later in the day and see Mr. Tigrett. On the afternoon of the same day he did call and had the conversation with Mr. Tigrett with reference to Mr. Tigrett taking the property at the price named in the contract. We think this was but an effort upon the part of Mr. Richardson to induce Mr. Tigrett to reconsider his withdrawal of the offer to purchase the property. Mr. Tigrett, it appears, first discussed the matter of the payment of the premium of a title guarantee, and Mr. Richardson agreed to pay the premium if Mr. Tigrett would accept the property under the contract. Mr. Tigrett then made some question with reference to a roadway, and that he would not purchase the property unless the complainant would give a roadway over his lands and adjacent to the property in question. Mr. Richardson was not prepared to bind Mr. Coate on that matter, but simply said that he might be able to induce Mr. Coate to sell the defendant a roadway, but the contract did not contemplate giving a roadway along the lands of complainant. Nothing at all definite was arrived at in that conversation. It is true that Mr. Tigrett did not tender back the written contract signed by the parties, at that time, nor at any time prior to the filing of the original bill. It is insisted by appellant that the fact that Mr. Tigrett retained the contract in his possession amounted to an acceptance of the contract, and operated as a waiver of his former wihdrawal of his offer. We do not think this contention is sound in view of all the circumstances and facts surrounding the transaction. In the first place when Mr. Richardson called at

the office of Mr. Tigrett on Monday morning, Mr. Tigrett was not in, and Mr. Richardson left the paper with Miss Hall, stating that he would return later and discuss the matter with Mr. Tigrett. There was nothing said by Mr. Tigrett in the conversation following the leaving of the contract with the secretary, that could be construed as a intention upon his part to be bound by the contract, or to reconsider his withdrawal of the offer, and we think it also appears that it was by inadvertance that Mr. Tigrett did not give the contract back to Mr. Richardson at that time, and he clearly overlooked having the contract in his possession, until the bill was filed in the cause alleging that the contract was still in possession of Mr. Tigrett. We do not think that these facts would bring this case within the rule that the receiving and retention of a contract implies an acceptance of the contract. It was received by Miss Hall, the secretary of defendant, in the absence of Mr. Tigrett, with the statement that she did not think it would do any good to leave the contract there as Mr. Tigrett would not take the property. The mere fact that Mr. Tigrett did not think to turn the paper back to Mr. Richardson or to complainant would not constitute an acceptance of the paper so as to have it operate as re-instating an offer that had been previously withdrawn. The conversation in the office of Mr. Tigrett with Mr. Richardson fully disclosed that Mr. Tigrett would not renew his offer to purchase the property, and that he had not reconsidered the matter of withdrawing his offer. On the contrary it clearly appears that Mr. Tigrett would not renew the offer to purchase except on certain additional conditions, and especially with reference to the donation of the right of way for a road. On this matter there was no agreement between the parties. We are further of the opinion that the contract or offer to purchase the property having been revoked on Saturday evening preceding the further negotiations on Monday following, there was then no contract between the parties. The contract having been revoked and the offer to purchase having been withdrawn, the parties then stood in the same position as they stood at the beginning of the negotiations, and in order to bind the defendant for the purchase of this property a new contract would had to have been entered into between the parties, and to assented to by the parties in writing. This was not done. There was no new contract; there was no acceptance of the former contract by defendant after it had been revoked.

It results that all assignments of error are overruled, and the decree of the Chancellor is affirmed. The cost of this appeal will be paid by complainant and surety on the appeal bond.

Heiskell and Owen, JJ., concur.