DOBSON & JOHNSON, INC., et al. v. CLARENCE H. WALDRON et al. —336 S. W. (2d) 313.

Middle Section.  January 15, 1960.

Certiorari Deined by Supreme Court May 4, 1960.

Trabue, Sturdivant & Harbison, Nashville, for complainants.

Barksdale, Hudgins & Osborn, Nashville, for defendants.

I

SHRIVER, J. This is a suit for breach of a contract to sell land.

Dobson & Johnson, Inc., a Tennessee corporation engaged in the general real estate business, brought suit for the use and benefit of itself and of Frank L. Turner, Carl D. Storey, Jr., and Frank A. Berry, Jr., against Clarence H. Waldron and Margaret Virginia Waldron, seeking a decree for specific performance of a contract to convey certain land described in the bill to the complainants or their designees, and, in the alternative, for damages for breach of contract. To this end the bill prays for all necessary references to the master and for general relief.

Complainants allege that the defendants are the owners of 80 acres of land, more or less, situated in the 2nd Civil District of Davidson County, Tennessee, and that on or about April 16, 1958, complainant Dobson & Johnson, Inc., made a written offer, as agent, to purchase said tract of land from the defendants for $75,000 on the terms and conditions set out in the offer. That this offer was obtained from the complainant by Chas. C. Dennis and Paul H. Peterman, real estate agents with whom defendants had listed said property for sale.

It is further alleged that the written offer was duly submitted to the sellers by the aforesaid agents and that on April 21, 1958, the defendants wrote on the back of said offer the following:

"We refuse this offer as written. However, we will accept $1050.00 per acre as it surveys out. The conditions in the Original offer acceptable to us. However, notes to bear 6% int. from maturity."

"Clarence H. Waldron
Mrs. Clarence H. Waldron

"This offer expires July 1st, 1958. C.H.W."

A photostatic copy of the original offer and counter-offer was attached to the bill as Exhibit 1.

The aforesaid real estate agents, Dennis and Peterman, submitted this counter-offer to the complainants and it was fully discussed by all parties.

It is further alleged that the defendants ordered a boundary survey of the tract of land and that, with the consent and knowledge of the defendants, the complainants caused tests to be made of the land to determine the percolation qualities of the soil so as to ascertain the possibilities of developing the said tract as a residential subdivision. It is alleged that the complainants expended approximately $1,500 in obtaining these tests.

It is alleged that at no time during the interim from April 21, 1958 and July 1, 1958, did the defendants or either of them or their agents ever communicate to the complainants that said counter-offer was in any respect withdrawn, modified or terminated.

It is alleged that after the completion of the percolation tests and survey of the property, the complainants Dobson & Johnson, Inc., accepted said counter-offer and after conferring with the other complainants, Turner, Storey and Berry, it was agreed that they would undertake to subdivide and develop the said tract of land. Accordingly the contract was assigned to the three individuals Turner, Storey and Berry, who fully accepted the counter-offer of the defendants, and all of the complainants caused their acceptance to be written on the contract and executed on June 30, 1958. It is averred that the real estate agents Peterman and Dennis were duly notified by the complainants on July 1, 1958, of said acceptance and complainants aver that said agents on

said date notified the defendants of said acceptance, both verbally and in writing.

Complainants further aver that the price which they offered to pay for the said tract of land, and which was fixed by the defendants themselves at $1,050 an acre, is fair and reasonable and that, in all respects, the contract is fair, equitable and without taint of any sort.

It is averred that in reliance on the proposition made by the defendants, complainants contacted a number of prospective home builders and contractors and received commitments for the sale of more than $50,000 worth of lots in said tract of land before July 1, 1958. They state that they are now and have been since June 30, 1958, ready, able and willing to perform said contract on their part, and continue to stand ready to do so, and that, as evidence of their good faith, they deposited the earnest money called for in the contract with the Attorneys Title Company, which the defendants' agent designated as escrow and closing agent.

The answer admits that on or about April 16, 1958, the complainants made a written offer as agent to purchase the land in question on terms and conditions appearing in the offer and that said offer was had by Dennis and Peterman, but it is denied that said Dennis and Peterman were agents representing the defendants.

It is further admitted that the counter-offer was made and signed by the defendants as written on the back of the original offer and bore the legend, ''This offer expires July 1, 1958'', with the initials C. H. W. thereunder, but it is stated; ''Said defendant respectfully shows to the Court that he intended to give the complainant until July 1, 1958 to purchase this property at $1,050.00 per

acre as it surveys out and that, this gift of opportunity should expire at the end of June 30, 1958.''

The answer states that on July 1, 1958, in the evening of that day near 6:30 P.M., defendant, Clarence H. Waldron, called the real estate man, Paul H. Peterman, and stated to him that he wanted his papers returned to him inasmuch as he had heard nothing from Dobson & Johnson.

The answer continues, ''He was by said Peterman advised that he, Peterman, was expecting the complainants to decide to purchase said land and the said Peterman, at that time, insisted that the complainants had until midnight of said day of July 1, 1958, in which to purchase on the terms described. Whereupon, said Peterman was firmly told that the offer to sell was withdrawn and that the defendants would not sell their property on such terms.''

Defendants further deny the acceptance of the said counter-offer and deny that a valid and binding contract for the sale of their property has been had from them.

Thus, the only two issues presented to the Chancellor and to this Court are (1) whether or not the real estate brokers, Peterman and Dennis, were the agents of the defendants so that notice to said agents of the acceptance of the offer constituted notice to the defendants, and, (2) whether or not the counter-offer to sell for $1,050 an acre was accepted by the complainants before it expired according to its terms or was revoked.

By stipulation the cause was heard on oral testimony at the conclusion of which the Court ordered a decree resolving the issues in favor of the defendants and dismissing complainants' bill. From said decree the com-

plainants prayed and perfected their appeal to this Court and have assigned errors.

## II

### Assignments of Error

Complainants below, appellants here, filed the following assignments of error.

1. "The Chancellor erred in holding that no binding contract was entered into by the parties, and in particular in holding that there was a lack of consideration, that there was a withdrawal of the offer, a lack of acceptance before expiration of the offer and a lack of mutuality.

2. "The Chancellor erred in holding that the complainants were without damages, since this was not even an issue on trial before the Court at the time of the hearing.

3. "The Chancellor erred in not decreeing specific performance of the contract."

## III

1. Were the real estate brokers, Charles C. Dennis and Paul H. Peterman, agents of the defendants in this transaction?

Peterman and Dennis had shown the property in question here to prospective purchasers with the knowledge and consent of the defendants in 1956, and in the early part of 1958, before the present transaction arose, Peterman had shown the property to several other prospective purchasers and he associated Dennis with him in his efforts to effect a sale for the defendants.

In the course of showing the property it came to the attention of Peterman and Dennis that complainants, Dobson & Johnson, Inc., who are developers of real estate subdivisions in the vicinity of Nashville, might be interested in this tract of land for development. Thereupon, they got in touch with complainants Dobson & Johnson and made an effort to interest them in this tract of land. As a result of these efforts the offer which is made exhibit to the original bill was submitted to Peterman and Dennis who took it to the defendants, who in turn kept it for several days. A conference was then arranged between the defendants and complainants Dobson & Johnson on April 21, 1958. After some discussion and negotiation the defendants made a counter-offer which Mr. Peterman wrote on the back of the original offer and both of the defendants signed their names to this counter-offer.

The record shows that at no time did Dobson & Johnson or those with whom they were associated in the transaction undertake to go behind the agents Peterman and Dennis but all of their inquiries and contacts were made through these two real estate brokers.

It is to be noted that the written offer originally submitted, including the counter-offer which was signed by the sellers, provided for a commission of 5% to the agents to be paid by the sellers. And both Peterman and Dennis testified that throughout the transaction they had looked to defendants, the owners, for their commission.

It is to be further noted that when Mr. Waldron concluded that he did not want to go through with the transaction he called Mr. Peterman and told him, "Get my

contract back''. This occurred on July 1, 1958. At the trial the defendant Mr. Waldron testified, ''I told him (Peterman) it was his duty to get it back''.

When the complainants decided on June 30, 1958, to accept the counter-offer they communicated this fact to Peterman.

It is argued by learned counsel for the defendants that Peterman and Dennis were not agents of the defendants but that they were merely ''Go betweens''. It may be said, incidentally, that we fail to find anything in the record which would seem to justify the apparent attitude of unfriendliness and belligerence on the part of the defendant Waldron to these real estate agents since, as far as we can see, the whole transaction was open and above board and was an honest attempt to get a very substantial price for the property which, apparently, represents a very great increase over the price at which the defendants bought said property a few years ago.

In Sec. 62-1301, T. C. A., the term ''Real estate broker'' is defined as any person who for compensation or a valuable consideration or promise thereof sells or offers to sell, buys or offers to buy, or negotiates the purchase or sale or exchange of real estate. And shall include any person, partnership, association or corporation employed by the owner of lots or other parcels of real estate who shall sell or exchange or offer or attempt to negotiate the sale or exchange of such lot or parcel of real estate.

In 8 Am. Jur. ''Brokers'' Sec. 85, it is said:

''Ordinarily, his duties are merely those of a negotiator, upon whom it is not incumbent to direct or

advise as to the terms of the contract or to explain or construe the meaning of the words used."

In one of the early Tennessee cases Woodfolk v. Blount, 4 Tenn. 147, 9 Am. Dec. 736, it was argued that the broker was not such an agent as to impute to the purchasers the knowledge of a prior conveyance. There the Court said:

"It is objected that Jacob Blount is not such an agent as the law contemplates, when it is considered that notice to him shall bind his principal. This is not believed to be correct. This whole business seems to have been transacted entirely by Jacob Blount for the defendants, Blount and Harris, and they received the benefit of the contract. The law then is, that notice to the agent shall be considered sufficient notice to the principal."

Again in Williams v. Title Guaranty & Trust Co., 31 Tenn. App. 128, 212 S. W. (2d) 897, 901, the Court stated the general rule in a situation of this kind to be:

"It is a general rule of law that a principal is chargeable with and is bound by the knowledge of or notice to his agent, received while the agent is acting within the scope of his authority and which is in reference to a matter over which his authority extends."

We think from the facts in this record and the law as applied to same that we must hold that Peterman and Dennis were agents of the defendants in this transaction.

2. Was the counter-offer which provided, "This offer expires July 1, 1958", accepted before it expired according to its terms or was it revoked before it was accepted?

■ The record shows that on June 30, 1958, complainants Dobson & Johnson, Inc., by Mr. Johnson, and Messrs. Frank Berry, Jr., Frank Turner, and Carl Storey, Jr., indicated their acceptance of the counter-offer in writing on the back of the original contract. Under general principles of contract law the acceptance by the complainants on June 30, 1958, was sufficient to form a binding contract if the knowledge of this acceptance reached the offerors before they made an effective revocation of the offer.

■ It is to be remembered that the offeror can specify when and how he shall be notified of acceptance by the offeree. However, in this case no mode, manner or place of acceptance of the offer was specified. The written offer itself was left in the possession of the offerees, the complainants here, who had to determine questions of financing and reach a decision as to whether or not they would accept.

■ Since there were no specifications as to the manner of communication of the acceptance of the offer, the complainants followed the course of notifying the real estate brokers, Peterman and Dennis, who had shown them the land and with whom they had dealt throughout the transaction. They also notified the Attorneys Title Company, which company had been designated to make the title search and to close the sale. Dennis and Peterman were notified by telephone on July 1, and the Title Company was notified on the afternoon of the same day.

Furthermore, it is uncontradicted that Messrs. Peterman and Dennis, on July 1, mailed a letter to the Waldrons which letter is in the record and postmarked 10:00 P.M. July 1, 1958, notifying them of the acceptance of the offer by the complainants.

It seems clear that the complainants had all day of July 1, 1958, under the terms of the instrument, in which to accept the offer.

In computing time the last day is counted in its entirety. This is the rule by statute in Tennessee as to acts required by law (T. C. A. sec. 1-302) and the same rule has been applied to private contracts by the Courts. See Allen v. Effler, 144 Tenn. 685, 235 S. W. 67; Allen v. Reed, 147 Tenn. 612, 250 S. W. 546.

It is to be noted that the same rule applies to negotiable instruments. Demand for payment is to be made on the due date and the debtor has all day on that day to make payment under T. C. A. secs. 47-202, 203, 217.

The record shows that on July 1, Mr. Waldron, the defendant, called Mr. Peterman and had a conversation with him on the telephone in the early evening of that day. Mr. Waldron states that he called Peterman and told him that since he had not heard anything from Dobson & Johnson he wanted his contract back and that he was withdrawing the offer.

Mr. Peterman, on the other hand, states that he told Mr. Waldron at that time that the offer had been accepted by Dobson and Johnson and that he was just about to call Mr. Waldron at the time the phone rang when Mr. Waldron was calling him, that his purpose in calling Mr. Waldron was to notify him that the offer had been accepted.

That same evening Peterman and Dennis wrote Waldron the letter hereinabove referred to in which they gave notice of the acceptance of the offer. Said letter is in the record and postmarked 10:00 o'clock P.M. on July 1, 1958.

It is not denied that the purchasers, complainants herein, had no notice of any withdrawal of the offer prior to their acceptance thereof and that, in fact the offer had been accepted and the notation to that effect entered on the offer itself in writing and signed by the offerees on June 30, 1958. The only question in dispute is as to whether or not Mr. Peterman told Mr. Waldron on the telephone on July 1, 1958, that the offer had been accepted.

In the case of Traders' Nat. Bank v. First Nat. Bank, 142 Tenn. 229, 217 S. W. 977, 979, 9 A. L. R. 382, it was held that if a letter of acceptance is withdrawn from the mail that its being posted is not effective acceptance as of the moment it was mailed, however, if the letter is not withdrawn from the mail the acceptance is effective as of the time it is posted, the Court saying:

"In ordinary cases we will adhere to the old rule that the mailing of a letter amounts to a delivery of its contents to the person to whom it is addressed. This, however, is subject to the power of the person sending the letter to recover it from the mails, under the Postal Regulations of 1913. Such a delivery is therefore subject to be defeated by the proper exercise of such power."

In 2 Am. Jur. "Agency", Sec. 368, it is said:

"There is abundant authority supporting the general rule that the principal is chargeable with, and is bound by the knowledge of, or notice to, his agent received while the agent is acting within the scope of his authority and which is in reference to a matter over which his authority extends. This is sometimes called constructive notice; other courts, particularly

some English courts, prefer to characterize it as imputed notice. The fact that the knowledge or notice of the agent was not actually communicated will not prevent the operation of the general rule for the reason that the knowledge or notice of the agent is imputed to the principal and is therefore constructive notice; that is to say, in effect, while the failure of an agent to communicate to his principal information acquired by him in the course and within the scope of his agency is a breach of duty to his principal, yet the notice has the same effect as to third persons as though his duty had been faithfully performed."

In Gibson Oil Co. v. Hayes Equipment Mfg. Co., 163 Okl. 134, 21 P. (2d) 17, 88 A. L. R. 104, it was held that it is a generally recognized rule of law that the knowledge of the agent is imputed to the principal in connection with any transaction conducted or participated in by the agent in behalf of his principal.

Also see 45 A. L. R. 725, where a number of cases from various jurisdictions discuss this proposition.

In 12 Am. Jur. "Contracts", Sec. 31, it is said:

"The right to revoke an ordinary offer before acceptance is unquestioned. An acceptance in terms different from those contained in the offer does not prevent revocation. The revocation must, however, be communicated to the offeree before he has accepted, though a sale to another person of real property covered by an offer amounts to a revocation thereof provided such sale is known to the offeree."

In Hoover Motor Express Co. v. Clements Paper Co., 193 Tenn. 6, 241 S. W. (2d) 851, 853, the Court required

proof that the revocation had been communicated to the offeree prior to his acceptance. In that case the Court quoted with approval from Restatement of Contracts, Sec. 41, as follows:

"Revocation of an offer may be made by a communication from the offeror received by the offeree, which states or implies that the offeror no longer intends to enter into the proposed contract, if the communication is received by the offeree before he has exercised his power of creating a contract by acceptance of the offer."

Also see Coate v. Tigrett, 4 Tenn. App. 48.

The record shows that Mr. Waldron did not undertake to revoke the offer until the night of July 1, 1958, and at that time the purchasers had already signed the acceptance and notified the seller's agents, hence, we are compelled to conclude that the offer which was made in good faith was likewise accepted in good faith before any withdrawal or revocation on the part of the defendants. Therefore, we think the Chancellor was in error in dismissing plaintiffs' bill and in refusing to grant the relief prayed for.

It results that the assignments are sustained, the judgment of the Chancellor is reversed and a decree of specific performance will be entered according to the prayer of the bill. The cause will be remanded to the Chancery Court for such other and further proceedings pursuant to this opinion as are necessary and proper. The costs will be paid one half by the appellants and one half by the apellees.

Reversed and remanded.

Felts and Hickerson, JJ., concur.