**Floyd E. DUNN, Appellant,**

v.

**Eva D. SHANE and Stephen F. Sherwin, Appellees.**

**No. 3314.**

District of Columbia Court of Appeals.

Argued Sept. 30, 1963.

Decided Nov. 20, 1963.

Joseph G. Dooley, Washington, D. C., for appellant.

Hal Lackey, Washington, D. C., for appellee Shane.

Marshall P. Johnson, Washington, D. C., for appellee Sherwin.

Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.

HOOD, Chief Judge.

This action was brought by a real estate broker to recover compensation for his services in allegedly obtaining a contract of sale between Mrs. Shane as seller and Mr. Sherwin as buyer. Both Mrs. Shane and Mr. Sherwin were named as defendants and recovery was sought on two theories. One theory was that the broker was entitled to a commission; the other was that he was entitled to one-half of a deposit called for by the contract. The trial court denied recovery because it found there was no valid contract of sale. On this appeal the broker's entire argument is premised on the existence of a valid contract and our consideration will be confined to whether the trial court was in error in finding that no contract came into existence.

Mrs. Shane engaged the broker to sell her house for $59,500. He presented to her a proposed contract to sell to Mr. Sherwin for $50,000 all cash. She agreed to the terms and signed the paper which the broker took to Mr. Sherwin for his signature. Mr. Sherwin signed, but placed above his signature a statement that his signing was conditioned on obtaining a first trust loan of $35,000 on certain specified terms. The broker called Mrs. Shane and told her of Sherwin's conditional acceptance. In response to her inquiry he said it was not necessary for her to initial the changes made by Sherwin.

Sherwin had some difficulty in securing the required loan and so informed the broker. He also inquired of the broker if Mrs. Shane had accepted his condition regarding the loan, but, according to Sherwin, he could get no definite answer from the broker and when on a second occasion he could not get definite assurance from the broker that Mrs. Shane had accepted his condition, he informed the broker that he was withdrawing his counteroffer. In the meantime Mrs. Shane had gone to the Virgin Islands but, unknown to Sherwin, she had authorized her mother to initial the change in the contract if necessary.

After Sherwin had told the broker of his withdrawal of his offer the broker went to a building and loan association and obtained approval of a loan for Sherwin in the amount and on the terms he had stipulated, except that the loan was conditioned on Sherwin's wife being a comaker. When Sherwin was informed of this by letter from the broker, he called the broker and told him he had previously orally withdrawn his offer and if that was not sufficient he would do so in writing. He then wrote a letter to the broker stating that since Mrs. Shane had never accepted his offer he was withdrawing it. He further stated that a loan which required his wife's signature did not meet his condition. On the same day Sherwin stopped payment on the check which he had given as a deposit to accompany his counteroffer. The broker received this letter the day after it was mailed. Earlier that day he had had Mrs. Shane's mother initial the condition Sherwin had made on his offer.

The broker proceeded to order title on the property and have a date fixed for settlement. Mrs. Shane appeared at the title company and was ready to complete the sale, but Sherwin did not appear. Before trial of this case Mrs. Shane had resold the property to another purchaser for $50,750.

Although the facts are somewhat complicated, the applicable principles of law are clear. When the proposed contract, signed by Mrs. Shane, was presented to Mr. Sherwin, it constituted an offer. When Mr. Sherwin, before signing, added a condition, he did not accept the offer but instead made a counteroffer. Until Mrs. Shane accepted the counteroffer there was

no contract. Although the counteroffer was apparently acceptable to Mrs. Shane, for some reason the broker refrained from having her formally accept it until after Sherwin's oral notice of withdrawal. Then in an apparent effort to get a formal acceptance before receipt of written notice of withdrawal, the broker obtained Mrs. Shane's initials to the counteroffer. This occurred more than two weeks after the counteroffer had been made.

 Assuming, but not deciding, that Sherwin's oral notice of withdrawal was ineffective, the question is whether the initialing of the changes by Mrs. Shane a few hours before receipt of the written notice of withdrawal prevented the withdrawal from becoming effective. Sherwin's revocation by letter became effective only when delivered to the broker.[1] The acceptance by Mrs. Shane occurred earlier on the same day the letter of revocation was received, but her acceptance was not communicated to Sherwin until long after the letter of revocation had been received. It is our opinion that the uncommunicated acceptance did not prevent the revocation from becoming effective. The rule appears to be that, in cases like this, an acceptance is not effective until communicated to the offeree.[2] The rule, correctly stated in 1 Corbin, Contracts § 67, p. 277, is that where the offeror has specified no mode of acceptance but "the offer is of such a kind that the offeror needs to know of the acceptance in order to determine his subsequent action, and the offeree has reason to know this, a notice of acceptance must be given."

Here the offeror, Sherwin, obviously needed to know of the acceptance in order

that he could proceed with assurance in his attempt to obtain a definite commitment for the required loan and it is obvious that the broker, Mrs. Shane's agent, knew this.[3] When after a period of two weeks' waiting he had no notice of acceptance of his offer he was free to revoke it and he did so before receiving notice of acceptance. The result is that no valid agreement for sale ever came into existence and the broker's claim must fail.

Affirmed.

---

1. Patrick v. Bowman, 149 U.S. 411, 13 S. Ct. 811, 37 L.Ed. 790 (1893); National Labor Relations Board v. Vapor Recovery Systems Company, 311 F.2d 782 (9 Cir. 1962); 1 Williston, Contracts, § 89 (3rd ed. 1957); 1 Corbin, Contracts § 39 (1963); Restatement, Contracts § 69 (1932).

2. Sokol v. Hill, 310 S.W.2d 19 (Mo.App. 1958); Wilkie v. Banse, 166 Neb. 138,

88 N.W.2d 181 (1958); Dobson & Johnson, Inc. v. Waldron, 47 Tenn.App. 121, 336 S.W.2d 313 (1960).

3. It should be noted that throughout the transaction all communications and negotiations took place between Sherwin and the broker, acting as agent for Mrs. Shane. There were no direct communications between Sherwin and Mrs. Shane.