**CAREFREE VACATIONS, INC., Plaintiff,**

v.

**Barbara BRUNNER, Defendant.**

**No. 85–2372–MB.**

United States District Court, W.D. Tennessee, W.D.

July 15, 1985.

Judgment Granting Permanent Injunction July 19, 1985.

Sam L. Crain, Burch, Porter & Johnson, Memphis, Tenn., Herbert A. Rosenthal, Hausman & Rosenthal, Washington, D.C., for plaintiff.

Carlton Barnes, Memphis, Tenn., Dale A. Cooter, Washington, D.C., for defendant.

## ORDER ON MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT

McRAE, Chief Judge.

This case involves a dispute over the interpretation of the terms of an "Aircraft Lease-Purchase Agreement" ("the agreement") and in particular, those terms pertaining to the exercise by the plaintiff, Carefree Vacations, Inc. ("Carefree"), of an option to purchase from the defendant, Barbara Brunner, the aircraft which was the subject of the agreement. Defendant purchased the aircraft from plaintiff on January 15, 1985. In the contract, defendant agreed to give plaintiff sixty (60) days to purchase the plane back from defendant. The last day of the sixty-day period ended on a Saturday, and plaintiff did not tender payment until the following Monday. Defendant now contends the payment was untimely and plaintiff no longer has an option to purchase.

Presently before the Court are defendant's motion to dismiss and plaintiff's motion for partial summary judgment. Both parties have responded to the respective motions, and oral arguments have been heard.

### MOTION TO DISMISS

Defendant Brunner moves to dismiss the instant action under Rule 12(b)(3) of the Federal Rules of Civil Procedure for improper venue. The motion is based on paragraph twenty of the agreement which provides:

> This agreement shall be interpreted in accordance with and performance shall be governed by the laws of the State of Texas. Jurisdiction and venue in the event of a lawsuit shall be in McLennam County, Texas.

Thus, the question presented is whether this contractual venue provision should be enforced by this Court.

Courts are split on whether the enforceability of forum selection clauses in diversity cases is a matter that federal law governs or whether application of state substantive law is appropriate. Compare *Taylor v. Titan Midwest Const. Corp.,* 474 F.Supp. 145, 147 (N.D.Tex.1979) and *St. Paul Fire & Marine Insurance Co. v. Travelers Indemnity Co.,* 401 F.Supp. 927, 929 (D.Mass.1975) (both looked to federal law) with *Leasewell Ltd. v. Jake Shelton Ford, Inc.,* 423 F.Supp. 1011, 1015 (S.D.W.Va. 1976) (held that state law must govern the propriety of enforcing such clauses).

■ The Court, however, need not reach this issue here, for as defendant correctly asserts, Tennessee state substantive law that arguably would apply herein is in substantial conformity with the federal approach to forum selection clauses. The law of Tennessee as well as federal decisional law acknowledges that forum selection clauses are prima facie valid and should be enforced unless the party resisting application of the clause can clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching. *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972); *In Flight Devices v. Van Dusen Air, Inc.,* 466 F.2d 220, 234 n. 4 (6th Cir.1972); *Dyersburg Mach. Works v. Rentenbach Eng. Co.,* 650 S.W.2d 378 (Tenn.1983). *See also Central Contracting Co. v. Maryland Casualty Co.,* 367 F.2d 341 (3rd Cir.1966).

Thus, the burden of proof is upon the resisting party (plaintiff herein) to demonstrate that the forum selection clause does not pass the two-prong test outlined above. The Court notes that if plaintiff makes a strong showing with regard to either (or both) of the standards, the forum clause should not be enforced.

■ Plaintiff first contends that the clause is invalid because the contract was presented to plaintiff in an atmosphere of exigency and plaintiff had no opportunity to negotiate changes. In support thereof plaintiff contends Carefree Vacations was in serious financial straits and its only option was to sign the contract or loose its plane to an earlier secured lender. While the allegations advanced by plaintiff indi-

cate that plaintiff was experiencing emergency conditions, they plainly fail to reach the level of a claim or defense of undue influence or overreaching. The Court finds that plaintiff has submitted no evidence to support a finding that the contract sued upon is other than one which was fairly negotiated at arm's length and in a businesslike fashion between the parties and voluntarily entered into by plaintiff in the hope of reaping an economic benefit. The Court therefore concludes that the forum selection agreement cannot be avoided by plaintiff under the first claim of "invalidity."

Turning to the "second prong" of the test, plaintiff contends that the forum selection clause is unreasonable. Courts have narrowly construed what is unreasonable or unfair, holding that "an agreement is unreasonable only where its enforcement would under all circumstances existing at the time of litigation seriously impair plaintiff's ability to pursue his cause of action. *In Flight Devices, supra.* Factors considered by courts in examination of the reasonableness of contractual venue provisions include:

(1) which state law governs the contract;

(2) the residence of the parties and witnesses;

(3) place of execution and/or performance of the contract;

(4) public policy;

(5) availability of remedies in the selected forum; and

(6) inconvenience or injustice.

*Taylor,* 474 F.Supp. at 149; *Furbee v. Vantage Press, Inc.,* 464 F.2d 835 (D.C.Cir. 1972); *Gaskin v. Stumm Handel Gmbh,* 390 F.Supp. 361 (S.D.N.Y.1975).

■ Upon consideration of the record and the arguments propounded herein, the Court does not find that Texas has a reasonable relationship to this transaction. Neither of the parties live or do business in Texas. The contract was executed in Illinois and Tennessee (plaintiff signed in Illinois; defendant signed in Tennessee). Plaintiff contends that only one witness will be from Texas (Larry Walston). Defendant asserts that most, if not all, of the probable witnesses live in Texas. However, defendant does not identify the witnesses with particularity or assert to what matters these purported witnesses are expected to testify. Defendant also points to the fact that payments were wired to Texas. However, this Court does not find that the fact that payments were wired through Texas enroute to Illinois gives Texas the requisite relationship. In light of the lack of contact Texas had with the instant transaction, plaintiff rightly fears the possibility of being deprived of its day in Court.

Accordingly, defendant's motion to dismiss for improper venue is hereby denied.

## MOTION FOR PARTIAL SUMMARY JUDGMENT

Also before the Court is plaintiff's motion for partial summary judgment. This motion is grounded upon plaintiff's contention that because the final option exercise date of the agreement fell on a Saturday, plaintiff had until the following Monday to exercise the option to purchase. In support thereof, plaintiff avers that under Tennessee, Texas, and Illinois law, when an option to exercise payment falls on Saturday, Sunday, or a holiday, performance is delayed until the next business day.

In her response, defendant contests plaintiff's averment and submits instead that none of the three states, Texas, Tennessee, or Illinois, would apply plaintiff's theory in the instant matter because the statutes relied upon are applicable to times to act pursuant to other statutes and not option contracts.

■ The first question presented under plaintiff's motion for partial summary judgment is whether the choice-of-law provision—"this agreement shall be interpreted in accordance with and performance shall be governed by the laws of the State of Texas"—in paragraph twenty (20) is enforceable. It is uncontroverted that the transaction in this case is multi-state. The negotiations and performance of the contract, including the contract dispute giving

rise to the instant lawsuit did not occur in any one state. In a multi-state transaction, the contracting parties' choice-of-law provision is valid absent contravention of public policy of the forum state or a showing that the selected forum does not bear a reasonable relationship to the transaction. *Woods-Tucker Leasing Corporation of Georgia v. Hutcheson-Ingram Development Company*, 642 F.2d 744, 749–53 (5th Cir.1981). Plaintiff pointed to the Uniform Commercial Code of Texas, Tennessee and Illinois to substantiate that the choice-of-law forum must have a substantial relationship to the transaction in order for the provisions to be enforceable. All three states' Uniform Commercial Code provide:

> Except as provided hereafter in this section *when a transaction bears a reasonable relation to this state and also to another state or nation, the parties may agree* that the law either of this state or of such other state or nation shall govern their rights and duties. Failing such agreement, this title applies to transactions bearing an appropriate relation to this state. (emphasis added)

Vernon's Texas Codes Annotated, Business and Commerce, Volume 1, §§ 1.102 and 1.105; Tennessee Code Annotated § 47–1–105; Illinois Ann.Stat., Ch. 26, §§ 1–102 and 1–105. Thus, even application of any of the three states' UCC would have prescribed the same "substantial relation" test.

■ Upon review of the testimony, the record, and consideration of the oral arguments, the Court finds that the matter at bar bears no "substantial relation" to Texas. The contract was executed in Tennessee and Illinois. The bill of sale transferring the aircraft to defendant Brunner was signed in Illinois. The payments by Carefree actually came to rest in defendant's bank in Granite City, Illinois. The aircraft was based in Chicago, Illinois. The parties to the contract were residents of Illinois for plaintiff and Tennessee for defendant. Neither party maintained a place of business in the other party's state, and neither maintains a place of business in Texas. The record reflects that Texas is defendant's brother's place of residence and business. Defendant, however, steadfastly maintains that her brother, Mr. Walston, was not her agent in the transaction. Further, in the memorandum in support of her motion to dismiss, defendant's only reference to her brother was that he delivered the contract to plaintiff. Given defendant's denial of her brother's involvement, any nexus with Texas, is extremely remote and insubstantial.

■ Accordingly, the Court finds the choice-of-law provision unenforceable. Inasmuch as this is an action based on diversity of citizenship, the Court is bound by the conflict of law rules of the forum in which it sits. *Boatland, Inc. v. Brunswick Corp.*, 558 F.2d 818, 821 (6th Cir.1977). Here the forum state is Tennessee, and clearly the conflict of laws of Tennessee applies.

■ In determining contractual rights and obligations, Tennessee adheres to the principle that the substantive rights of the parties to a contract are to be governed by the law which the parties intended. In the absence of a manifestation of contrary intention, the parties are presumed to have contracted pursuant to the laws of the state in which the contract was entered into. *Boatland, Inc. v. Brunswick Corp.*, 558 F.2d 818 (6th Cir.1977) citing *Deaton v. Vise*, 186 Tenn. 364, 210 S.W.2d 665 (1948). Since the choice-of-law provision which arguably expressed the parties' intent was found inapplicable, the Court must look to the place of making. As stated earlier, the contract was executed in Tennessee (place defendant signed) and Illinois (place plaintiff signed). Inasmuch as Tennessee and Illinois law are in substantial conformity on how to compute the final exercise date of an obligation when that date ends on a Saturday, this Court need not engage in a balancing of contacts to determine which law applies.

*Tenn.Code Ann.* § 1–3–102 provides in pertinent part:

> ... the time within which any act provided by law is to be done, shall be comput-

ed by excluding the first day and including the last, unless the last day is a Saturday, a Sunday, or a legal holiday, and then it shall be excluded.

Defendant Brunner contends that this statute is not applicable because a statutory construction provision does not apply to private contracts. The Court disagrees. Tennessee has expressly held that *Tenn. Code Ann.* § 1-3-102 is applicable to private contracts. *Dobson & Johnson, Inc. v. Waldron,* 47 Tenn.App. 121, 336 S.W.2d 313, 318 (1960) citing *Allen v. Effler,* 144 Tenn. 685, 695, 235 S.W. 67, 70 (1921). Further, defendant's reliance on *Adams v. Swift,* 500 S.W.2d 437, 441 (Tenn.Ct.App. 1973) and *Jones v. Horner,* 260 S.W.2d 198, 199 (Tenn.Ct.App.1953) is misplaced inasmuch as the courts therein found plaintiffs did not comply with the option agreement because of the manner in which they extended acceptance (sent notice of intent to purchase instead of tendering payment), not because extending a Saturday due date to Monday pursuant to the statutory construction provision was inapplicable to private contracts. Accordingly, this Court finds plaintiff's exercise of the option to purchase was timely.

The record reflects that Illinois has a statutory provision which excludes Saturdays, Sundays, and holidays in computing the last day of a period (Ill.Stat.Ann. Ch. 1 § 1012). While Illinois case law has not expressly held that the provision is applicable to private contracts, it lends a strong inference that the provision is applicable thereto. See *Nabor v. Occidental Life Ins. Co. of Calif.,* 78 Ill.App.3d 288, 33 Ill.Dec. 543, 546, 396 N.E.2d 1267, 1270 (1979) (the court held that parties could stipulate otherwise but noted that the rule set forth in the Illinois statutes was the general rule as to the computation of time).

Finally, defendant alternatively submits that partial summary judgment is inappropriate because even if the applicable statutory construction and common law extended the due date until Monday, she did not in fact receive the payment in Illinois until that Wednesday, two days later than the Monday due date. This argument is meritless. Plaintiff submitted affidavits from the Federal Reserve Bank (bank used to make the wire transfers) substantiating that the two lease payments were timely and that the option payment was made on March 18, 1985, which was timely pursuant to the law of Tennessee. The telex that was submitted as an affidavit contained the dollar amount, the name of the receiving bank and the name of defendant Brunner as recipient. Clearly this affidavit supports plaintiff's assertion that since plaintiff had wired the previous lease payments to defendant by way of Texas, plaintiff similarly was to wire the option payment via Texas. Additionally, defendant conceded in her affidavit that she knew the money was being wired by way of Texas. It follows that where, as here, defendant has submitted nothing other than her personal self-serving affidavit to substantiate that the payments were to be paid directly to her Tennessee or Illinois bank account and the contract is silent as to the exact manner payment is to be tendered, defendant will not be heard to argue untimeliness when the money was in fact received in Texas on the due date and not in Illinois. The fact that the previous payments had been tendered to Texas and defendant had offered no objection clearly establishes that payment through Texas was the parties' course of dealing.

In light of the foregoing, plaintiff's motion for partial summary judgment is granted.

This constitutes the Court's written ruling which was given orally at the end of the hearing on July 5, 1985. Counsel for the plaintiff was instructed to prepare a judgment based upon the Court's ruling.

## JUDGMENT GRANTING PERMANENT INJUNCTION

On July 5, 1985, this Court heard plaintiff's motion for summary judgment. The Court also heard and denied defendant's motion to dismiss on the basis of the forum selection clause. The Court declined to honor such provision on the basis that Tex-

as has insufficient relationship to this transaction to warrant enforcement of the clause. For the reasons set forth in the Court's order entered this date, the Court grants plaintiff's motion for partial summary judgment and enters judgment for the plaintiff subject to the following terms and conditions.

1. In accordance with the provisions of the preliminary injunction entered in this case entered May 7, 1985, plaintiff shall tender to the defendant the sum of $290,000; upon said tender, the defendant shall execute and deliver a bill of sale and whatever other documents are necessary to effect the transfer of a Boeing 707-331B, N-8733, Serial No. 20062, without encumbrance or liens or clouds on title from the defendant to Carefree Vacations, Inc. Defendant shall further execute whatever documents which may be subsequently needed by plaintiff to cure any defects in title to said aircraft. The $290,000 shall be paid within thirty days of July 5, 1985.

2. Plaintiff shall make the lease payment due July 8, 1985, pursuant to this Court's preliminary injunction entered May 7, 1985. Plaintiff shall, at the time it tenders the $290,000 to defendant, pay defendant, on a pro rata basis, rent on the aircraft at the rate of $25,000 per month from July 6, 1985.

3. The parties may submit motions requesting the Court to reconsider and readjust certain matters in the order entered May 7, 1985, granting a preliminary injunction on which the Court reserved the right to reconsider after a decision on the merits. These matters include interest owed by Barbara Brunner to Carefree Vacations (Para. 12) and whether plaintiff is entitled to recover any portion of the $25,000 per month rental payments made to defendant (Para. 4).

4. Upon plaintiff's tendering the $290,000 to defendant, the lease of the aircraft between plaintiff and defendant as created by this Court's order entered May 7, 1985, shall terminate.