**SAVERS FEDERAL SAVINGS AND LOAN ASSOCIATION, Plaintiff,**

v.

**HOME FEDERAL SAVINGS AND LOAN ASSOCIATION, et al., Defendants.**

**No. 86–2840 GB.**

United States District Court, W.D. Tennessee, W.D.

June 6, 1989.

Robert D. McCutcheon, Russell L. Mullinix, Oklahoma City, Okl., William F. Kirsch, Jr., Stephen D. Wakefield, Memphis, Tenn., for plaintiff.

Robert E. Craddock, Jr., Stephen W. Vescovo, John L. Ryder, Memphis, Tenn., Jonathan M. Gordon, Los Angeles, Cal., Stanley H. Getz, Woodland Hills, Cal., Glen G. Reid, Jr., Memphis, Tenn., O.H. Storey, III, Little Rock, Ark., Jon R. Moss, Marina del rey, Cal., Michael Goldstein, Memphis, Tenn., Pamela G. Steele, Knoxville, Tenn., for defendants.

## ORDER GRANTING MOTIONS TO DISMISS

GIBBONS, District Judge.

Before this court are motions to dismiss or for summary judgment filed by several cross-defendants in this lender liability lawsuit. The cross-defendants, Federal Savings & Loan Insurance Corp. (FSLIC) as conservator of Westwood Savings and 'Loan Association (Westwood), First Federal Savings and Loan Association of Largo (Largo), and Landmark Savings Bank, Independence Federal Bank, Great American Federal Savings and Loan Association, and South Bay Savings and Loan Association (collectively Standard Pacific), all contest their liability to the borrower and cross-plaintiff, Richard H. Breithaupt, Jr. Breithaupt's claims against this lender group are grounded in their alleged liability under a contract to purchase the construction loan for the One Memphis Place building from Savers Federal Savings and Loan Association (Savers). After reviewing the pleadings, affidavits, depositions and exhibits submitted to the court, the cross-defendants' motions are granted.

In its order of June 17, 1988, this court reviewed extensively the facts of this case. Briefly, the facts are as follows. Breithaupt and several companies under his control formed Center City Investors for the purpose of building an office building in downtown Memphis, Tennessee (One Memphis Place). The construction loan was for more than $27 million. Savers committed to loan this money to Breithaupt in late 1983. As a result, Breithaupt's group and Savers entered into a loan agreement. Savers then found several other banks willing to purchase the loan made to Breithaupt for permanent financing. These banks (the permanent lenders), Savers and Breithaupt, entered into a contract to purchase and sell this loan (the Four–Party Agreement). This contract was conditioned upon several occurrences. One Memphis Place was substantially completed in mid–1986. Thereafter, Savers tendered the construction loan pursuant to the Four–Party Agreement, to the permanent lenders for purchase. The permanent lenders refused the tender in August 1986, and again in September 1986. Prior to the second tender, Center City Investors defaulted on payments due to Savers under the construction loan agreement. In November 1986, Savers initiated foreclosure proceed-

ings on One Memphis Place. Before the foreclosure sale, however, Breithaupt's investor group, Center City, filed for bankruptcy protection under Chapter 11. Savers then commenced suit against Breithaupt and the permanent lenders. Breithaupt then cross-claimed against his co-defendants. In this order the court considers Breithaupt's cross-claims against the permanent lenders, which include Westwood, Largo and Standard Pacific. Breithaupt contends that failure to comply with the Four–Party Agreement and the acts of those cross-defendants in administering the loan was a breach of contract, breach of the implied covenant of good faith and fair dealing, and breach of fiduciary duty. By order on November 23, 1988, this court dismissed Breithaupt's cross-claims against these defendants based on intentional infliction of emotional distress, interference with a prospective business advantage, that cross-defendants have violated the Racketeer Influenced and Corrupt Organizations Act (RICO) and for contribution and indemnity.

Now the court finds that summary judgment should be granted as to the remainder of the cross-claims against Westwood, Largo and Standard Pacific. Disposition of the motion requires a discussion of each of the claims.

■ 1. *Choice of Law.* Breithaupt insists that California law governs all of these remaining claims against the cross-defendants. This court disagrees. Breithaupt's claims are not premised on federal law. Therefore, in this diversity case, when determining what law applies to the lawsuit, this court must apply the choice of law provisions of the state in which it sits. *Klaxon Company v. Stentor Electric Manufacturing Co., Inc.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). All causes of action brought by Breithaupt arise from the alleged breach by the permanent lenders of loan agreements. It is clear that the only contract to which Breithaupt and these lenders were all parties was the Four–Party Agreement. Breithaupt essentially claims that because these permanent lenders refused to purchase the loan from Savers as called for in the Four–Party Agreement, they breached their contract with Breithaupt, as well as violated their duties of good faith and fair dealing and their fiduciary duty to Breithaupt. These various breaches also caused injury to Breithaupt and give rise to his negligent infliction of emotional distress claim.

Tennessee applies different choice of law provisions depending on the characterization of the claim. If the essence of the case is a tort action, then the rule of *lex loci delictus* governs. *Winters v. Maxey,* 481 S.W.2d 755, 756 (Tenn.1972). If the case is characterized as a contract question, the rights of the parties are governed by the law that the parties intended, and absent a manifestation of contrary intent, the parties are presumed to have contracted under the laws of the state in which the parties entered into the contract. *Ohio Casualty Insurance Co. v. Travelers Indemnity Co.,* 493 S.W.2d 465, 467 (Tenn. 1973). In cases where there are both tort and contract claims, the court must look at the "basic" question of the case. *See Bonee v. L & M Construction Chemicals,* 518 F.Supp. 375, 379 (M.D.Tenn.1981). The chief characteristic of Breithaupt's claims is their contractual nature. They all have their origination from the purported contractual arrangement between Breithaupt and the cross-defendants. Therefore, this court will apply the law intended by the parties.

The Four–Party Agreement, which is the only contract to which Breithaupt and the permanent lenders are parties, states that "This Agreement shall be construed and enforced in accordance with the laws of the State of Tennessee." Four–Party Agreement at 6. Tennessee law makes such forum selection clauses *prima facie* valid unless a party "can clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Carefree Vacations, Inc. v. Brunner,* 615 F.Supp. 211, 213 (W.D.Tenn.1985) (citing *Dyersburg Machine Works, Inc. v. Rentenbach Engineering Co.,* 650 S.W.2d 378, 380 (Tenn.1983)). After considering all

factors relating to the reasonableness of this clause, the court determines it is just to give it effect. *See Brunner*, 615 F.Supp. at 214. Therefore, Tennessee law will be used to construe each of Breithaupt's cross-claims.

■ 2. *Breach of Contract.* Breithaupt alleges that the Lender Group was obligated to respond to lease proposals and not withhold approval of these lease proposals, to pay advances in a timely manner for construction on One Memphis Place, to approve project plans and budget proposals, and not to interfere or control the management of the project. Cross-claim of Breithaupt of March 27, 1987 ¶ 58. Breithaupt suggests that the group's obligation with respect to these matters arises from the Interim Construction Loan Commitment, the "Mini–Perm Commitment," the Loan Participation Sale and Trust Agreement, and the Four–Party Agreement. After reviewing these documents, it is clear that the Four–Party Agreement controls this question, and that it does not obligate the permanent lenders to act as alleged by Breithaupt. Therefore, this court finds there has been no breach of contract by the permanent lenders and dismisses Breithaupt's claim.

It is a fundamental tenet of contract law that parties are bound only by agreement. *Price v. Mercury Supply Co., Inc.*, 682 S.W.2d 924, 933 (Tenn.Ct.App.1984). Typically, agreement is evidenced by signed documents, especially in the world of commercial loans. In this case, the permanent lenders signed only two of the agreements alleged by Breithaupt to be controlling in the litigation: a Loan Participation Sale and Trust Agreement signed February 9, 1984, and the Four–Party Agreement signed March 13, 1984. Of these two, the permanent lenders and Breithaupt were parties only to the Four–Party Agreement. Further, the Four–Party Agreement contains an integration clause that makes it the only agreement between those parties. See Four–Party Agreement at 2, Exhibit B to Declaration of Penny Costa.

Essentially, the Four–Party Agreement is a contract under which the permanent lenders would purchase from Savers the loan made by Savers to Breithaupt and the other borrowers.[1] This contract to purchase this loan was conditioned upon several contingencies. Upon purchase, the permanent lenders would replace Savers with respect to liabilities for administering the loan. Four–Party Agreement ¶ 10. The borrowers apparently defaulted on payments on the loan around the time Savers tendered the loan for purchase by the permanent lenders. In August 1986, and again in September 1986, the permanent lenders rejected the tender by Savers for purchase of the loan. It is important to note that the Four–Party Agreement stated that "Borrower and Permanent Lenders agree that after the [loan is] purchased by Permanent Lenders, the Interim Lender [Savers] without further act of the parties, shall be released and discharged from all liabilities arising under the Loan Documents ... it being expressly understood that such purchase is without recourse and without any representation or warranty whatsoever." Four–Party Agreement ¶ 10. Nowhere in the Four–Party Agreement is a statement that makes the permanent lenders liable to Breithaupt prior to their purchase of the Savers–Breithaupt loan.

From this review of the contract, it is clear to this court that the permanent lenders were not obligated in any way to the borrower (Breithaupt) until they purchased the loan. Purchase of the loan was a condition precedent to the permanent lenders being obligated to the borrower with respect to paying construction costs, approving leases and the like. A condition precedent "must be performed before the agree-

1. The Four–Party Agreement was between Savers Federal Savings and Loan Association (Interim Lender); Center City Investors, a joint venture composed of Teton Land Company, Walika, Inc., and Tamet Land Company, all controlled by Richard H. Breithaupt, Jr. (Borrowers and Guarantors of the loan); and Great American Federal Savings and Loan Association, First Federal Savings and Loan Association of Largo, Fla., South Bay Savings and Loan Association, Westwood Savings and Loan Association, Independence Federal Bank FSB, First Federal Savings and Loan Association; and Savers (Permanent Lenders).

ment of the parties shall become a binding contract or it may be a condition which must be fulfilled before the duty to perform an existing contract arises." *Strickland v. City of Lawrenceburg*, 611 S.W.2d 832, 837 (Tenn.Ct.App.1980) (citing 17A C.J.S. *Contracts* § 338). To be sure, the interim lender (Savers) might have a cause of action for breach of contract against the permanent lenders if it could prove that failure to purchase the loan was wrongful in light of their agreement. There is no basis, however, for arguing that the Four–Party Agreement requires the permanent lenders to assume any liabilities or take an active role in administering the loan until they had purchased it. Prior to purchase of the loan, the loan agreement between Breithaupt and Savers governed the activities of the parties and the Loan Participation Sale and Trust Agreement governed the relationship between Savers and the permanent lenders.

Breithaupt alleges that the fact that the permanent lenders were to give the interim lender written notice of default, and because the permanent lenders had the right to approve the plans and specifications of the project and received written approval to change aspects of the project, shows that this was more than a mere agreement to purchase. This court disagrees. The clause in the Four–Party Agreement upon which Breithaupt relies relates only to the conditions upon which tender of the agreement could be rejected by the permanent lenders. It is clear that the Four–Party Agreement represents a carefully crafted meeting of the minds between these parties. It is understandable that these permanent lenders, having agreed to limit the circumstances under which they could reject the tender of this loan would want some power over certain fundamental aspects of the project. However, ultimately, until the permanent lenders bought the loan, it is clear that the controlling or dominating party in administering this loan was Savers. This is evident from the Four–Party Agreement, Breithaupt's October 11, 1988, Declaration, and the Loan Participation Sale and Trust Agreement. Further, Breithaupt makes much of the fact

that Savers sought permission from the permanent lenders to approve leases, make budget reallocation and the like. This, however, was completely in keeping with the Loan Participation Sale and Trust Agreement. *See* Exhibit E of Costa Declaration at 7. Given the fact that Savers and the permanent lenders were engaged in a fiduciary relationship, it appears reasonable that Savers would seek approval from its fiduciaries before changing key aspects of the deal. This does not, however, prove that the permanent lenders had gained dominion or control over the administration of the project from Savers. Such an act would have essentially abrogated Savers' role in the project.

More specifically, Breithaupt categorically denied, or could not produce information, that would directly implicate Westwood in specific acts that would constitute a breach of contract. These include: refusal to approve leases (Deposition of Breithaupt, v. IX, p. 1311; 1349–51), refusal to make advances on the loan for construction costs (Deposition of Breithaupt, v. IX, pp. 1360–61), failure to approve specific project plans (Deposition of Breithaupt, v. X, pp. 1562–70), or Westwood's "control over the business and management of One Memphis Place" (Deposition of Breithaupt, v. X, pp. 1609–10). These claims are the heart of Breithaupt's breach of contract suit against Westwood, and they are not supported by his own testimony.

Although Largo and Standard Pacific do not rely on similar deposition testimony with respect to Breithaupt's claims against them, they are plainly entitled to summary judgment as well. Breithaupt has the burden to show specific facts that would implicate the other permanent lenders in a way that is not shown on the face of the Four–Party Agreement or the Loan Participation Sale and Trust Agreement. Breithaupt, quite simply, has not met this burden. Summary judgment is required if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*,

477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Further, Breithaupt must show something more than that there is "some metaphysical doubt as to the material facts" in this case. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Here, Breithaupt has done nothing to show that anything other than the contract was the extent of the agreement between the permanent lenders and the borrower. No facts support his claim that the permanent lenders exerted a great deal of control over this project "contrary to the language contained in the agreements." Quite to the contrary, it appears that Savers and the permanent lenders acted in conformity with the agreements that they signed. To be sure, Breithaupt has cited specific examples where Savers' loan officials were in contact with Westwood or the other permanent lenders. However, he has failed to show when these permanent lenders exercised control over the project beyond what was reasonably expected based on the duties delineated by the loan documents. Nor has he directed the court's attention to examples where Westwood dealt directly with Center City Investors. Therefore, summary judgment on this question is granted as to Westwood, Largo and Standard Pacific.[2]

■ 3. *Breach of Covenant of Good Faith and Fair Dealing.* Breithaupt correctly asserts that the breach of the covenant of good faith and fair dealing claim is grounded in contract law. Because Breithaupt has not shown evidence of bad faith by the permanent lenders sufficient for a fair-minded jury to return a verdict for him, however, this claim is likewise dismissed.

As noted by the Tennessee Court of Appeals, the duty of good faith and fair dealing varies depending upon the contract in question. *TSC Industries, Inc. v. Tomlin*, 743 S.W.2d 169, 173 (Tenn.Ct.App.1987). Under Tennessee law, this court must look to the language of the contract to determine what is fair and reasonable with respect to the intention of the parties. *Covington v. Robinson*, 723 S.W.2d 643, 645 (Tenn.Ct.App.1986). According to the Restatement (2d) Contracts § 205, comment a, "Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party; it excludes a variety of types of conduct characterized as involving 'bad faith' because they violate community standards of decency, fairness or reasonableness."

In this case, the court has determined that the permanent lenders were not liable to Breithaupt for breach of contract with respect to several administrative duties relating to the loan made to Breithaupt. Under Breithaupt's theory of breach of the duty of good faith and fair dealing, he alleges that "The Lender Group ... has carried out its design to impede, impair and/or frustrate the efforts of the Borrowers to secure the benefits and advantages of the Agreement." Cross–Claim of March 27, 1987 ¶ 68. Other than making this statement, however, Breithaupt fails to

---

**2.** As a second theory that the permanent lenders breached the Four–Party Agreement, Breithaupt alleges that Savers was engaged in an agency relationship as the permanent lenders' agent on the One Memphis Place project. Therefore, under basic agency law, because Savers purportedly breached its agreement to Breithaupt and his companies, the permanent lenders are also liable for this breach. This theory was discredited by the Second Circuit in *Penthouse International, Ltd. v. Dominion Federal Savings & Loan Association*, 855 F.2d 963, 981 (2d Cir.1988). There, the court rejected a similar theory because there was no evidence of an agency relationship existing that would have rebutted the loan agreement in question in that case. Likewise, here, Breithaupt has not produced suffi-

cient evidence from which a fair-minded jury could conclude that, contrary to the plain language in the loan documents, Savers was engaged as the permanent lenders' agent. *See* Loan Participation Sale and Trust Agreement, Exhibit E to Costa Declaration, at 7. Further, Tennessee agency law clearly requires that the existence of an agency relationship "must be traceable to the principal [citations omitted], because an agency relationship is created by the actions of the principal, not the actions of the agent." *Harben v. Hutton*, 739 S.W.2d 602, 606 (Tenn.Ct.App.1987). Here, the Loan Participation Sale and Trust Agreement between Savers and the permanent lender specifically disavows any agency relationship, and Breithaupt has shown no evidence to the contrary.

show that a "fair-minded jury could return a verdict for [him] on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

Breithaupt has set out in an affidavit several instances in which Westwood (and supposedly the other members of the permanent lender group) failed to respond to requests for reallocation of funds in order to concentrate on leasing One Memphis Place. Declaration of Richard Breithaupt, Jr., attached to Opposition to Motion of Federal Savings & Loan Insurance Corp., at 3–4. Apparently, Breithaupt believes that the failure of the permanent lenders to respond to this request was in bad faith. He states that, "Contrary to the language contained in the agreements entered into among the various parties, all of the lenders—including Westwood Savings—actively participated in, and actively exercised control over, the business affairs of Center City Investors...." *Id.* at 2. He then details various failures by Westwood (and presumably the other permanent lenders) to respond to requests. At no time, however, does he detail how the permanent lenders exerted control over his company, or had a duty to respond to his requests. As stated earlier, the permanent lender's legal obligations with respect to approving leases and allocating funds, did not ripen until they had purchased the loans in question. *See* Four Party Agreement ¶ 10. There was no purchase of the loan and, consequently, Breithaupt's allegations are not grounded in any cognizable legal duty by the lender group. Courts, under Tennessee law, must distinguish between moral obligations between the parties and legal obligations that are dispositive of the duties one party owes the other. *See Webster & Mann v. Rose*, 53 Tenn. (6 Heisk.) 93, 96–97 (1871). As the Supreme Court has noted, with respect to a Rule 56 motion, "The mere existence of a scintilla of evidence in support of [the non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. Despite Breithaupt's bald statements that more was happening in terms of the permanent lender's control, than was apparent from the contract, he has not offered evidence of this control to a degree that would show that the Four–Party Agreement had been abrogated. He has cited deposition excerpts that show examples of the permanent lenders working with Savers on certain aspects of leasing arrangements. However, this, as noted earlier, is completely in keeping with the contractual arrangement between Savers and the permanent lenders, as distinguished from the duties between Breithaupt and the permanent lenders, whose rights and liabilities are governed by the Four–Party Agreement. Because he has not made a showing which would refute the plain intention of the parties shown by the Four–Party Agreement, and he has not shown acts of bad faith by the permanent lenders, his allegations of breach of the duties of good faith and fair dealing must be dismissed as to Westwood, Largo and Standard Pacific.

■ 4. *Breach of Fiduciary Duty.* Likewise, Breithaupt's allegation that the permanent lenders have breached a fiduciary duty owed the borrowers is unfounded and must be dismissed. Under Tennessee law, a fiduciary duty arises from a confidential relationship between two or more parties. Tenn.Code Ann. § 35–2–102(a)(2) (Supp.1988). In this case, Breithaupt and the permanent lenders were parties to a conditional contract whereby the lender group would assume certain legal liabilities and duties when it purchased loans involving Breithaupt as borrower. If the permanent lenders had assumed the legal duty of administering these loans, a fiduciary duty could well have arisen. Because there was no contractual or confidential relationship between the parties, there is not fiduciary duty between them. Further, the alleged breach of this duty involves the leasing of One Memphis Place, paying advances, approving project plans, and managing the project. Because no evidence has been presented as to any obligation of the permanent lenders to handle these affairs, Breithaupt has not carried his burden as

required by Rule 56 of the Federal Rules of Civil Procedure. Therefore, his claim for breach of fiduciary duty as to Westwood, Largo and Standard Pacific, is dismissed.

5. *Negligent Infliction of Emotional Distress.* The permanent lenders' last point in their motions for summary judgment pertains to Breithaupt's charge that the lender group negligently inflicted emotional distress upon him because of this alleged breach of contract and all the attendant problems that have arisen since these loans went into default.

In order for an individual to recover for a loss occasioned by an emotional disturbance due to a breach of a contract, there must be evidence of bodily harm, or that the breach of such a contract "is of such a kind that serious emotional disturbance was a particularly likely result." Restatement (2d) Contracts § 353. "Damages for emotional disturbance are not ordinarily allowed," for breach of contract claims. *Id.* at comment a. The Restatement also notes that breaches of contract that result in sudden impoverishment or bankruptcy, although by chance may cause emotional distress, there is typically no recovery because the contract is not one in which such distress was a "particularly likely result." *Id.* Typically, it is for the court to determine whether a person's conduct is actionable with respect to emotional distress claims. *See Medlin v. Allied Investment Co.*, 217 Tenn. 469, 481, 398 S.W.2d 270, 275 (1966). The court must weigh "the interest in a judicial climate which does not become burdened with trivial lawsuits versus the interest a person has in being free from unreasonable emotional disturbance." *Id.* at 479, 398 S.W.2d at 274. Most states limit recovery in emotional distress cases to situations where the actor's conduct can be classified as "outrageous." *See, e.g., id.*

Here, Breithaupt has alleged he has suffered "humiliation, mental anguish and emotional and physical distress." Cross-claim of March 27, 1987 at ¶ 103. Specifically, he stated at deposition that he had "suffered a lot of anxiety, sleepless nights," and lost weight and developed rashes. Deposition of Breithaupt, v. X, pp. 1635–37. This does not rise to the level of "unreasonable emotional disturbance" as required to be actionable at law. It is very likely that the failure of a business deal of this magnitude would cause one of its chief investors great anxiety, the result of which would be loss of sleep and loss of appetite. But this is not the sort of emotional distress that is redressed by an award for negligent infliction of emotional distress. In Tennessee, such awards have generally been limited to cases of extreme distress caused by "outrageous" conduct of the defendant. *See, e.g., Taylor v. Bearden*, 6 Tenn.Ct.Civ.App. (6 Higgins) 33, 36 (1915) (emotional distress claim arising from the negligent embalming performed on decedent's wife allowed against the embalmer). Therefore, the court dismisses Breithaupt's claim for negligent infliction of emotional distress against Westwood, Largo and Standard Pacific.[3]

In summary, the court finds that Breithaupt's claims against Westwood, Largo and Standard Pacific for breach of contract, breach of the implied duty of good faith and fair dealing, breach of a fiduciary duty and negligent infliction of emotional distress contain no genuine issues of material fact and these cross-defendants are entitled to judgment as a matter of law on those claims.

IT IS SO ORDERED.

---

**3.** The cross-defendants have also moved to strike Breithaupt's supplemental responses submitted after the November 30, 1988, cut-off date in which to file responses to this motion for summary judgment. Because this order grants the summary judgment motion, the court, having considered Breithaupt's supplements, denies the motion to strike.