**WORLD PLAN EXECUTIVE COUNCIL—U.S.,** Plaintiff,

v.

**ZURICH INSURANCE COMPANY,** et al., Defendants.

**Civ. No. 4–90–70617.**

United States District Court, S.D. Iowa, C.D.

Dec. 10, 1992.

William P. Goldstein, General Counsel's Office, Fairfield, IA, for plaintiff.

L.R. Voigts, Nyemaster Law Firm, Des Moines, IA, Bradley J. Baumgart, Shug-hart, Thomson & Kilroy, Kansas City, MO, for defendants.

## MEMORANDUM OPINION, RULINGS ON CHOICE OF LAW AND MOTION IN LIMINE, AND ORDER FOR FURTHER BRIEFING ON MOTION TO DISQUALIFY ATTORNEY

VIETOR, District Judge.

Plaintiff World Plan Executive Council—U.S. ("WPEC") brings suit against defendants Zurich Insurance Company ("Zurich") and Zurich Insurance Company (U.S.B.) ("Zurich USB"), alleging breach of contract, breach of the covenant of good faith and fair dealing, negligence, and negligence per se. Defendants move for summary judgment. On July 27, 1992, this court granted WPEC's application for bifurcated resistance brief, agreeing to bifurcate for determination first the issue of which law applies to the claims. WPEC resists the motion on the choice of law issues. Defendants also move to disqualify WPEC's counsel; WPEC resists that motion. WPEC filed a motion in limine, which defendants have not resisted. The parties presented oral arguments on all the motions, and they are submitted.

### SUMMARY JUDGMENT: CHOICE OF LAW

Relevant Facts

The relevant facts for the choice of law issue are as follows. WPEC is a non-profit California corporation with its principal place of business in Pacific Palisades, California. WPEC conducts business in Iowa. Zurich is a Swiss corporation with its principal place of business in Zurich, Switzerland. Zurich conducts business in the United States through its United States branch, Zurich USB. Zurich USB is a New York corporation with its principal place of business in Schaumburg, Illinois. Zurich USB is licensed to do business, and does business, in Iowa.

In November 1980, Zurich issued an aircraft insurance policy to the Age of Enlightenment Travel Service AG ("AETS"), a Swiss entity; the policy covered a certain

airplane owned or operated by AETS or related entities. The communications and dealings leading up to the policy between Zurich and AETS occurred either completely in Switzerland, or between Switzerland and Germany. The policy was issued and delivered by Zurich to AETS in Switzerland, and the policy was written in the German language, an official language of Switzerland.

The English-language version of the policy states in ¶ 1.11, under the heading "Applicable law," that "[t]he Swiss Federal Law on the Insurance Contract of 2nd April 1908 is applicable in addition to these provisions, including the provisions of insurance and security in Swiss aviation legislation." WPEC proffers an alternate English translation of the provision above from the original German-language policy: "Application of the Law: Supplementing these provisions, the Swiss Federal Insurance Contract Statute of April 2, 1908, and the provisions on insurance and security of Swiss aviation legislation apply."

In August 1981, WPEC, which was then renting the plane listed on the policy, was made an additional insured on the policy. WPEC had not been involved in any negotiations or discussions that led to the issuance of the policy. The policy was in effect on February 18, 1982, when the insured plane had a hard landing in Iowa, and at least one of the occupants, Sherry Hogue, suffered injuries as a result. Zurich paid sums for property damage to the airplane.

In July 1986, WPEC called Zurich USB to inform it that Sherry Hogue had contacted WPEC regarding personal injuries she received from the plane's hard landing in 1982. On December 31, 1986, Hogue filed a lawsuit against WPEC, the pilot and co-pilot of the plane at the time of the incident, and others. She alleged that following the landing, the pilot and co-pilot urged her not to report the accident or to make a claim to the insurance carrier. In exchange for her promise of silence, the co-pilot promised to pay her for her injuries. The co-pilot did make payments to Hogue for approximately two years; the last pay-

ment was in March 1984. In January 1987, WPEC forwarded a copy of the amended complaint to Zurich. Zurich replied that it would defend WPEC while reserving its rights under the policy, and it sent an English-language version of the insurance policy to WPEC.

In January 1988, Hogue and the co-pilot signed a settlement agreement for payment of $50,000 to Hogue in exchange for a full release of the co-pilot. In October 1988, Hogue and WPEC entered into two agreements—a "Limited Assistance Agreement" and an "Agreement for Recapture." The Limited Assistance Agreement provided that WPEC would make monthly installment payments to Hogue over five years, and would provide certain non-cash services and benefits to her.

In December 1988, Hogue entered into a release agreement releasing certain parties, including WPEC and AETS, from any and all liability arising out of her complaint. Under this settlement, Hogue was paid $2,000. Hogue preserved claims against Zurich under the Occupants' Accident Insurance provision of the policy.

In April 1989, Hogue and Zurich entered into a settlement agreement under which Zurich paid Hogue $25,000 for her release of Zurich as to claims under the Occupants' Accident Insurance provision, and all other claims including claims "based upon unfair claims or settlement practices or bad faith in settlement negotiations, or any other claim of bad faith * * *."

On November 6, 1990, WPEC filed suit in this court alleging that defendants failed to promptly advise WPEC or Hogue of the no-fault Occupants Accident coverage in the policy and failed to pay benefits under that coverage. WPEC alleges four substantive claims: breach of contract (Count I), breach of the covenant of good faith and fair dealing (Count II), negligence (Count III), and negligence per se based on Iowa Code § 507B.4(9) (Count IV).

Preliminary Discussion

In diversity cases, federal district courts apply the choice of law rules of the state in which they sit. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496,

61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Whirlpool Corp. v. Ritter*, 929 F.2d 1318, 1320 (8th Cir.1991). Iowa courts apply the rules in the Restatement (Second) of Conflict of Laws for contract claims, *see Cole v. State Auto. & Cas. Underwriters*, 296 N.W.2d 779, 781 (Iowa 1980) (§§ 187, 188), and for tort claims, *see Goetz v. Wells Ford Mercury, Inc.*, 405 N.W.2d 842, 843 (Iowa 1987) (§ 145).

■ The court also uses the law of the forum on the initial question of how to characterize the claims for purposes of choice of law rules. *See, e.g., Ryder Truck Rental, Inc. v. UTF Carriers, Inc.*, 790 F.Supp. 637, 641 (W.D.Va.1992); *Savers Fed. Sav. & Loan Ass'n v. Home Fed. Sav. & Loan Ass'n*, 721 F.Supp. 940, 942 (W.D.Tenn.1989); *see also* 16 Am.Jur.2d Conflict of Laws § 3. Count I is clearly a contract claim. Counts III and IV are tort claims. The characterization of Count II, breach of the covenant of good faith and fair dealing, is more complicated.

■ Since it recognized a cause of action for first-party bad faith in the insurance context, the Iowa Supreme Court has consistently stated that it is a tort claim. *See Reuter v. State Farm Mut. Auto. Ins. Co.*, 469 N.W.2d 250, 253 (Iowa 1991); *Engstrom v. State*, 461 N.W.2d 309, 314 (Iowa 1990); *Dolan v. Aid Ins. Co.*, 431 N.W.2d 790 (Iowa 1988). Defendants rely on *Sandbulte v. Farm Bureau Mut. Ins. Co.*, 343 N.W.2d 457 (Iowa 1984), in which the Iowa Supreme Court held that "a five year statute of limitations for actions founded on 'unwritten contracts,' is the appropriate statute of limitations for an action based on an insurer's breach of a good faith duty to defend an insured against third party claimants." *Id.* at 462. *Sandbulte*, however, involved the more specific good faith duty to defend an insured, as opposed to the more general implied covenant of good faith and fair dealing involved here. *Sand-*

*bulte* also predates the cases cited above that characterize this claim as a tort.

Because the Iowa Supreme Court has established that the breach of the covenant of good faith and fair dealing is a tort, I conclude that the Iowa Supreme Court would apply the choice of law rules for tort claims to Count II.

Breach of Contract

■ The contract claim is based on defendants' failure to promptly advise plaintiff and Hogue of the no fault coverage in the policy, and defendants' failure to pay benefits under the no fault coverage. The applicable provision of the Restatement (Second) of Conflicts of Law states that:

The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

§ 187(1).[1] Under this rule, Swiss law will apply to the contract claim.

Plaintiff argues that application of Swiss law would violate the fundamental policies of Iowa, citing the Iowa statutory provisions underlying Count IV, and Iowa law on breach of the implied covenant of good faith and fair dealing. Plaintiff relies on general choice-of-law principles in § 6 of the Restatement (Second) of Conflict of Laws, in particular § 6(2)(b) and (c), which refer to relevant policies and interests of the forum and other interested states. Plaintiff's argument focuses on its tort claims, not issues under the contract per se. Plaintiff does not explain why these fundamental policies would require the application of Iowa law to the *contract* claim.

Plaintiff asserts that Zurich did not make an effective choice of Swiss law. In a memo dated October 23, 1987, Zurich acknowledges that a policy provision stating that coverage would end when the plane is

---

1. The parties focus their § 187 arguments on subsection 2, but according to comment d, subsection 2 applies to questions involving issues such as capacity, formalities, and substantial validity. Comment c states that subsection 1 applies to issues relating to construction, sufficiency of performance, and other such gaps that the parties could have filled with express provisions but instead incorporated by reference extrinsic material such as the provisions of some foreign law. Applying this commentary, the issues in this case fit under subsection 1 as opposed to subsection 2.

erased from the *Swiss* Aircraft Register should have read *U.S.* Aircraft Register, because Zurich was aware that the plane was U.S.-registered. Plaintiff asserts that this acknowledged "change" in the policy also effectively reformed the choice of law provision to apply U.S. law instead of Swiss law. Plaintiff does not fully explain the logic underlying this contention, and I do not find it persuasive.

Plaintiff also argues that *it* did not effectively choose Swiss law because it was not involved in the negotiation or execution of the contract and it was ignorant of the choice of law provision. The situation in this case is a bit different from most cases because plaintiff, a U.S. entity, was added to an existing policy between two Swiss entities. Presumably, if plaintiff had independently sought a policy to cover the airplane it was renting, it would have chosen a U.S. policy. Plaintiff, however, did not choose its own policy, and instead agreed to become an additional insured on a Swiss policy. Defendants' argument that plaintiff, having accepted the benefits of the policy, cannot now refuse to abide by the choice of law provision, is well taken.

Plaintiff claims that even if the parties did effectively choose Swiss law it should not apply because plaintiff's proffered alternate translation of the choice of law provision (together with the "effective reformation" argument) would lead to the application of "United States" law. Plaintiff's alternate English translation does not appear to differ in any material way from the English-language policy provided by Zurich.

Finally, plaintiff asserts that comment e to § 193 (Contracts of Fire, Surety, or Casualty Insurance) also weighs against the application of Swiss law. Comment e states that "[e]ffect will frequently not be given to a choice-of-law provision in a contract of * * * casualty insurance which designates a state whose local law gives the insured less protection than he would receive under the otherwise applicable law * * *." Although defendants have raised questions about WPEC's standing to maintain its breach of contract claim for various reasons, plaintiff has not provided any evidence that the applicable substantive law of Switzerland provides less protection to the insured than Iowa, even assuming that Iowa law is the "otherwise applicable law."[2]

Tort Claims

The tort claims are based on the same alleged omissions as the contract claim. WPEC relies on these omissions for its claims of breach of the covenant of good faith and fair dealing, negligence, and negligence per se based on Iowa's statute on unfair claim settlement practices.

▉ Defendants argue that the contractual choice-of-law provision should also apply to the negligence and negligence per se claims because they are based on the same conduct as the contract claim, and that plaintiff should not be able to avoid the choice-of-law provision by "painting a new name on a breach of contract and/or breach of the covenant of good faith claim." A contractual choice-of-law provision, however, is not dispositive of the proper choice of law for related tort claims. *See, e.g., United States v. Conservation Chemical Co.,* 653 F.Supp. 152, 176–178 (W.D.Mo.1986) (with several insurance contracts at issue, the court applied the law chosen to contract claims arising out of contracts with choice-of-law provisions; applied Missouri law to contract claims arising out of contracts that had no choice-of-law provisions; and applied Missouri law to

---

**2.** Section 193 would apply the local law of the state which the parties understood was to be the principal location of the insured risk, unless some other state has a more significant relationship. The commentary to § 193, however, acknowledges that the location of the risk is more difficult to determine and less significant in a case involving an airplane because of the plane's mobility. *See* comments a and b. Defendants may have known that the airplane was U.S.-registered, but the coverage on the plane was world-wide. There is no evidence that defendants knew that the plane was hangared "mainly" in Iowa.

Switzerland has a more significant relationship to the transaction and the parties than does Iowa, and considering the factors in § 188 and the principles in § 6, Switzerland would likely be the applicable law in the absence of the contractual choice-of-law provision.

the tort claims, including breach of implied covenant of good faith and fair dealing). If further proceedings indicate that only a contract claim really exists, and not a negligence or negligence per se claim, the appropriate remedy would be to dismiss those negligence claims. If the negligence and negligence per se claims are submissible, they will be governed by the law applicable to the tort claims, not the law the parties chose to apply to their contract.

In the event that the court does not apply the contractual choice-of-law provision to the tort claims, defendants argue that Iowa law should apply to those claims. Plaintiff also argues that Iowa law applies to the tort claims. Therefore, no dispute about which law applies exists, and Iowa law will apply to the tort claims.[3]

## MOTION TO DISQUALIFY PLAINTIFF'S ATTORNEY

 Defendants move to disqualify plaintiff's counsel, William Goldstein, because he "ought to be called" as a witness on behalf of plaintiff. This court has the authority to disqualify attorneys, as it " 'bears the responsibility for the supervision of the members of its bar.' " *Coffelt v. Shell*, 577 F.2d 30, 32 (8th Cir.1978). Any doubt regarding disqualification of counsel should be resolved in favor of disqualification. *Id.*

Defendants cite Model Code of Professional Responsibility Disciplinary Rule (DR) 5–102(A)[4] as the applicable ethical rule:

If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5–101(C)(1) through (4).

Defendants argue that Goldstein should testify about: the Limited Assistance Agreement which he negotiated on behalf of plaintiff with Hogue; numerous communications he had on plaintiff's behalf with Zurich USB during the period preceding execution of the Limited Assistance Agreement; and what and when he knew, or should have known, about the existence and contents of the "no fault" provision in the insurance policy.

Plaintiff argues that Goldstein is only one of several witnesses who could testify regarding the items defendants suggest he must testify about on behalf of plaintiff. Plaintiff also asserts that defendants have not explained why testimony regarding when plaintiff knew about the no fault provision is relevant to plaintiff's case.

 Defendants bear the burden of proving the facts required for disqualification—of proving that plaintiff "ought" to call its counsel as a witness. *Nolte v. Pearson*, 133 F.R.D. 585, 593 (D.Neb.1990);

---

**3.** The Restatement factors also indicate support for the application of Iowa law to the tort claims. Under § 145, the applicable contacts the court should take into account are: the place where the injury occurred; the place where the conduct causing the injury occurred; the domicil, residence, nationality, place of incorporation and place of business of the parties; and the place where the relationship, if any, between the parties is centered. § 145(2).

The contacts pointing to Iowa include: (1) where the injury to WPEC, i.e. the financial harm resulting from defendants' omissions, occurred, at least in part; (2) some of the conduct causing the injury—where many of the communications about Hogue's claim and the settlement of her suit against WPEC occurred (the omissions or decisions regarding the handling of Hogue's claim likely occurred in Illinois,

Switzerland, or both); (3) the place where plaintiff and Zurich USB were doing business (although the principal places of business of the parties are located in Illinois, California, and Switzerland); and (4) the place where the relationship between the parties was centered because most of the communications between WPEC and defendants regarding Hogue's claim occurred in Iowa or were between Iowa and Zurich USB's office in Illinois, and defendants acknowledge that Iowa was the center of activity surrounding Hogue's claim and defendants' handling of it.

**4.** The relevant provisions of the Iowa Code of Professional Responsibility are substantially identical to those in the ABA Model Code of Professional Responsibility.

*Shadow Isle, Inc. v. American Angus Ass'n,* No. 84–6126–CV–SJ–6, 1987 WL 17337, at *7 (W.D.Mo. Sept. 22, 1987).

■■■ Goldstein stated in oral argument that although he may have personal knowledge of material facts in dispute, plaintiff can present evidence on material facts with other witnesses. Goldstein stated that it might be more *efficient* for him to testify, if the court would allow him to do so and remain as counsel, but plaintiff could present all its evidence through other means. The court accepts Goldstein's statements at oral argument and the statements in plaintiff's brief that plaintiff can present its case without the testimony of Goldstein. The court therefore concludes that defendants have not proven that Goldstein "ought to be called" on behalf of plaintiff.

The court rejects plaintiff's argument that Goldstein should be able to remain as counsel *and* testify at trial if plaintiff gives its informed consent. Plaintiff cites the *Nolte* case in which the court found that plaintiff's counsel "ought to be called" as a witness, but that counsel could remain as counsel if plaintiff gave its informed consent to counsel *not* testifying at trial. The court specifically stated in that case that

> [a] substantially different question would be presented if [counsel] asserted that he should testify on behalf of his clients and be permitted to remain as counsel also. As a general matter, I agree with the courts which hold that a lawyer should not be permitted to be both a witness and an advocate in the same case simply because it is more cost effective for the client to have his lawyer appear as counsel and as a witness. * * * * In this case [counsel] has recognized this point and elected not to testify on behalf of plaintiffs.

*Nolte,* 133 F.R.D. at 596 n. 5. Goldstein will not be disqualified on the basis of DR 5–102(A), but he cannot testify at trial on behalf of his client if he remains as counsel.

■■■ At oral argument, defendants stated that *they* are going to call Goldstein as a witness on hotly disputed facts, and that therefore Goldstein should be disqualified as plaintiff's counsel. As Goldstein pointed out during argument, a different standard for disqualification applies when a litigant calls *opposing* counsel as a witness. DR 5–102(B) states that:

> If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client.

The standard under DR 5–102(B) is more stringent; otherwise, litigants might call their opposing counsel to testify as a trial tactic to disqualify the lawyer. *See Nolte,* 133 F.R.D. at 597. "The test for determining the existence of prejudice has been well stated to mean that the advocate-witness's testimony will be adverse to his client sufficient that his client will have an interest in discrediting his own lawyer's testimony." *Id.*

Zurich's Answer states that "if plaintiff suffered any injury or damages as alleged in the amended complaint, * * * said injury or damage was caused or contributed to be caused by the wrongful conduct or the wrongful or negligent act or omissions of plaintiff, its attorneys or representatives * * *." ¶ 16. Defendants state they plan to call Goldstein as a witness regarding his alleged contributory fault. To the extent that defendants intend to elicit testimony from Goldstein about his own acts or omissions that could constitute contributory fault and thereby reduce or eliminate any damages to which Goldstein's client would be entitled, defendants may have shown sufficient prejudice to disqualify counsel under DR 5–102(B). Because defendants raised this issue only at argument, however, the parties have not briefed the issues under DR 5–102(B). The court requires more specific information on Goldstein's possible testimony, and how it would prejudice plaintiff. Therefore, the court will order both parties to submit written briefs of no more than 10 pages each on DR 5–102(B) and how it relates to this case.

## MOTION IN LIMINE

Plaintiff filed a motion in limine requesting an order that provides:

> For all purposes in these proceedings, including the trial and appeal of this matter that no evidence shall be admitted or used which tends to prove that defendants utilised [sic] or relied on, to any extent at any time, the advice or opinion of any counsel with regard to the handling of the claims concerning the occupants accident provision of the policy, coverage positions taken on the policy of insurance, or the statute of limitations defense relating to the occupants accident provisions of the policy.

Plaintiff states that defendants' counsel has stated that they are not relying on the advice of counsel defense. Because of the implications for discovery, plaintiff requests the motion in limine now to protect it from use of the defense after discovery has closed.

Defendants have not filed resistance papers in response to the motion in limine. They have not pleaded the affirmative defense of advice of counsel. At oral argument, defendants agreed that they cannot and will not assert the advice-of-counsel defense at trial, but argued that the motion in limine is premature until discovery is finished because they are not sure what witnesses will say.

I will deny the motion in limine without prejudice to plaintiff to raise it again closer to trial. If defendants later decide to plead the advice-of-counsel defense, they will have to provide plaintiff with sufficient opportunity for discovery relating to that defense.

## RULINGS AND ORDER

IT IS ADJUDGED that Swiss law will apply to Count I, and Iowa law will apply to Counts II, III, and IV. Pursuant to the order granting application for bifurcated resistance brief, plaintiff shall have to and including January 11, 1993, in which to file its resistance to the substantive issues in defendants' motion for summary judgment.

IT IS ORDERED that defendants file, on or before January 11, 1993, a supplemental brief in support of its motion to disqualify plaintiff's counsel addressing its argument based on DR 5–102(B). Plaintiff shall have to and including 14 days after defendants file their supplemental brief in which to file a supplemental resistance brief. Defendants' motion to disqualify plaintiff's counsel will be considered submitted 14 days after defendants' supplemental brief is filed, or the day plaintiff files its supplemental resistance, whichever is earlier.

Plaintiff's motion in limine, filed June 12, 1992, is DENIED without prejudice to renew it later if necessary.